JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | ED CV 16-00339-AB (DTBx) | Date: | July 29, 2016 |
|---|---|---|---|

Title: *Quinshawnda Smith v. Aitima Medical Equipment, Inc.*

Present: The Honorable **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] Order GRANTING Defendant's Motion to Dismiss Without Leave to Amend or, in the Alternative, to Stay the Action [25]**

Before this Court is Defendant Aitima Medical Equipment, Inc.'s Motion to Dismiss or, in the Alternative, to Stay the Action ("Motion"), filed on April 15, 2016. (Dkt. No. 25). Plaintiff Quinshawnda Smith filed an Opposition on May 31, 2016, and Defendant filed its Reply on June 6, 2016. (Dkt. Nos. 31, 32.) The Court heard oral argument on June 20, 2016 and took the matter under submission. (Dkt. No. 33.) For the reasons discussed below, the Court hereby **GRANTS** the Motion to Dismiss **WITHOUT LEAVE TO AMEND**.[1]

---

[1] In its Motion, Defendant requested that if the Court decided not to dismiss the Complaint, in the alternative, it should stay proceedings pending the Supreme Court's decision in the *Spokeo* case because the issues being decided by the Supreme Court regarding standing could impact this case. (Mot., Dkt. No. 25, p. 16.) This request is now moot because the Supreme Court issued its decision in *Spokeo* on May 16, 2016.

## I. BACKGROUND

Plaintiff brought suit on February 25, 2016 for causes of action arising out of Defendant's alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. The following facts were alleged in the Complaint. (Dkt. No. 1.) Plaintiff received one phone call on February 3, 2016 from Defendant "using an autodialer and/or an artificial or prerecorded voice." (Compl. ¶ 1.) The phone call was regarding the sale of medical equipment. (*Id.*) Plaintiff did not provide prior express consent to Defendant, in writing or otherwise, to make the call. (*Id.* ¶¶ 1, 12.) After answering the phone, Plaintiff "heard a pause or dead air before anyone on the line began to speak." (*Id.* ¶ 14.) Plaintiff concludes that this pause indicated Defendant's use of an automatic telephone dialing system. (*Id.*) The Complaint also cites nine consumer complaints found online that reference the same phone number Defendant called Plaintiff from. (*Id.* ¶ 15.) Some of the consumer complaints provided by Plaintiff allege several calls and no voicemails. (*Id.*) Others mention that the caller was a live person who specifically knew the name of the individual he or she was trying to contact. (*Id.*) In addition, some of the consumer complaints allege that the live caller mentioned that the person of interest had filled out a form, indicating a possible claim of diabetes. (*Id.*) Plaintiff alleges harm to herself and members of the proposed class in the form of "multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, and violations of their statutory rights." (*Id.* ¶ 21.)

## II. LEGAL STANDARD

### A. Article III Standing

To bring suit in federal court, a party must meet the standing requirements of Article III of the Constitution. Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

---

*See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

### B. Rule 12(b)(6) Motion to Dismiss

Upon establishing the jurisdictional requirements mandated by Article III, a plaintiff must plead the grounds for which he or she is entitled to relief. Federal Rule of Civil Procedure 8(a)(2) requires a pleading to consist of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) gives a party grounds to dismiss a pleading that does not meet the pleading requirements of Rule 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Precedent details what is required to sufficiently state a claim under the federal rules. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While this does not require "detailed factual allegations," it still "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

To determine whether the pleading satisfies Rule 8(a)(2), the court should begin by identifying the elements of the claim. *Iqbal*, 556 U.S. at 675. Then, the court should distinguish the pleading's factual allegations from its legal conclusions. *Id.* at 678. When evaluating the pleading, mere conclusory allegations are not entitled to the assumption of truth, whereas a court should take as true all factual allegations in the complaint. *Id.* The court must then decide whether these factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 679.

### III. DISCUSSION

Defendant moves to dismiss Plaintiff's claims on two grounds. Defendant first asserts that the Court should dismiss Plaintiff's complaint for lack of subject matter jurisdiction because Plaintiff fails to, and cannot, sufficiently allege that she suffered a concrete injury in fact as required for standing. (Reply, p. 14-15.) Defendant argues that Plaintiff has not alleged any damages that she suffered, aside from a statutory violation, which is not enough to meet the concreteness and particularization requirements of standing. (*Id.* at 14.) Plaintiff responds that she sufficiently alleged both tangible and intangible harms – the drainage of cell phone battery, aggravation, and invasion of privacy – to show injury in fact as required by standing. (*Id.* at 9.)

Defendant's second assertion is that dismissal is proper because Plaintiff fails to allege facts to allow the Court to draw a plausible inference that Defendant used an automatic telephone dialing system ("ATDS") to call her, as required by Plaintiff's TCPA claims. (Mot., p. 12.) Defendant asserts that Plaintiff's allegations are insufficient because they consist of only one call with a pause, they lack detail regarding the call, and are conclusory. (*Id.*) Plaintiff responds that to state a claim under the TCPA, alleging a pause or dead air is sufficient to draw the inference that an ATDS was used. (Opp'n., p. 6-7.)

The Court begins by examining the threshold jurisdictional question of whether Plaintiff has established standing.

### A. Article III Standing

Defendant argues that Plaintiff lacks standing because she alleges no concrete harm and instead alleges only a bare statutory violation. (Mot., p. 14.) To establish standing, a plaintiff must allege facts to show that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547. Based on the arguments set forth in the Motion, the Court focuses on the first element of whether Plaintiff has sufficiently alleged facts to show that she suffered an injury in fact.

In *Spokeo*, the Supreme Court outlined the framework of the complete standing analysis courts should use to determine whether an injury in fact has been alleged. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). Since Defendant argues that the concreteness requirement is not satisfied, the Court turns to that analysis.

For a Plaintiff to have standing, he or she must allege an injury in fact that is concrete. *Spokeo*, 136 S.Ct. at 1548. A concrete injury is a real injury that actually exists. *Id.* It is not abstract; yet, to be concrete, the injury need not be tangible. *Id.* at 1548-1549. In addition to tangible injuries, intangible injuries can still be considered concrete. *Id.* at 1549. The Supreme Court instructs: "in determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* Further, the Supreme Court notes that while Congress can elevate injuries to be legally recognizable by statute, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right." *Id.* A

plaintiff cannot allege a procedural violation absent a concrete harm. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

Defendant's first assertion regarding concreteness is that Plaintiff did not provide details that show she herself suffered injury. Defendant argues that "plaintiff fails to allege that *she* was actually charged for the call or that she received more than one call." (Reply, p. 14.) Through this reasoning, Defendant attempts to make the point that Plaintiff does not specifically allege injury in which she herself suffered, but instead makes the injury a class allegation, rendering it insufficient under the concreteness requirement. Defendant is mixing particularization with concreteness, two distinct requirements for standing. Particularization requires that an injury "affect the plaintiff in a personal and individualized way." *Spokeo*, 136 S.Ct. at 1548. In Plaintiff's Complaint, she states that "Plaintiff and all members of the proposed class have been harmed," before listing the alleged harms. (Compl., ¶ 21.) Prior to this allegation of harm, Plaintiff alleged that she received a phone call from Defendant without providing prior consent. (*Id.* at ¶ 1.) The Court finds that the statement of harm is sufficiently particularized to show that Plaintiff alleges she herself, in addition to the members of the class, has been harmed by Defendant's unauthorized conduct.

Defendant next argues that the tangible and intangible harms Plaintiff asserts are conclusory and are only bare statutory violations, which are not sufficient. (Reply, at p. 15.) Plaintiff's allegation of injury consists of one paragraph in the Complaint: "Plaintiff and all members of the proposed Classes have been harmed by the acts of Defendant in the form of multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, and violations of their statutory rights." (Compl., ¶ 21.) While Defendant is correct that a bare statutory violation is not enough, *see Spokeo*, 136 S.Ct. at 1547-48, Plaintiff contends that she alleges more than a statutory violation.

Plaintiff argues that her assertion of battery drainage, aggravation, and nuisance are tangible and intangible harms sufficient to satisfy the requirements of concreteness. (Opp'n, p. 9.) Defendant argues that these allegations are conclusory and lack necessary detail to meet the requirements of concreteness for standing. Plaintiff alleged a harm of "multiple involuntary telephone and electrical charges," yet, she has only alleged the receipt of one phone call from Defendant. (Compl., ¶1, 21.) Additionally, it is unclear what Plaintiff means when she refers to incurring "electrical charges." (*Id.*) Plaintiff stated in oral argument that the charges referred to the drainage of cell phone battery, but the Complaint does not say that. As written, they could also be interpreted to mean the electrical charges to a telephone bill for the call. The Court agrees with Defendant that detail is lacking, but focuses on an additional point to determine whether standing exists:

whether Plaintiff's alleged harm resulting from a single phone call is sufficient to confer standing.

The Northern District of California encountered a similar situation where one of a plaintiff's alleged injuries, after downloading an application on his cell phone, was "diminished mobile device resources, such a storage, battery life, and bandwidth." *Hernandez v. Path, Inc.*, 2012 WL 5194120 *2 (N.D. Cal. Oct. 19, 2012). There, the court stated that "the specific harm caused by diminished resources of which Plaintiff complains is de minimis: depletion of 'two to three seconds of battery capacity.' " *Id.* at *2. In that case, the allegations were not regarding a phone call, but rather, a single download of an application to a mobile device. *Id.* at *1. While *Hernandez* and the case before the Court both allege a single instance of unauthorized conduct, receiving one phone call, as in the present case, would seem to require less battery than downloading an application, as in *Hernandez*. Further, in *Hernandez*, the plaintiff actually alleged in the complaint the depletion of a few seconds of battery capacity. *Id.* at *2. Here, Plaintiff does not provide any detail as to what the charges refer to or to the amount incurred. The Southern District of California also reviewed a similar case and cited *Hernandez* in its analysis. There, a plaintiff received two text messages and alleged that they consumed battery life and diminished the use and enjoyment of the cellular telephone plans. *Olmos v. Bank of America*, N.A., 2016 WL 3092194 *4 (S.D. Cal. June 6, 2016). Like *Hernandez*, the court found the fact "that [p]laintiff received two short text messages insufficient to convey standing because the loss of battery life and bandwidth as a result of these two messages was de minimis." *Id.* at *4. Turning to the case before the Court, the receipt of one phone call, as alleged by Plaintiff, is comparable to the receipt of a text message and any drainage of battery from a single call is surely minimal.

The Court recognizes the purpose prompting enactment of the TCPA and the injury multiple phone calls can cause. Courts have found allegations of "systematic rather than episodic" unauthorized conduct to be more than a de minimis injury, and thus sufficient to confer standing. *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499 *7 (N.D. Cal Dec. 3, 2013). Here, like in *Olmos* where plaintiff alleged "episodic discharge of battery power on two short occasions," Plaintiff alleges a single call that surely cannot be considered systematic. At most, the phone call lasted for a few seconds. Any depletion of Plaintiff's battery, or aggravation and nuisance, resulting from only one call, is a de minimis injury. The Court finds that "[t]he injury is too de minimis to satisfy the standing doctrine's core aim of improving judicial decision-making by ensuring that there is a specific controversy before the court and that there is an advocate with sufficient personal concern to effectively litigate the matter." *Caldwell v. Caldwell*, 545 F.3d 1126, 1134 (9th Cir. 2008). Plaintiff's de minimis injury is not sufficient to confer standing. Nor can Plaintiff amend the Complaint to allege more

than a de minimis injury given the fact that she received only one call.

Even though the Court finds that Plaintiff does not have standing to bring suit, the Court will still conduct a Rule 12(b)(6) analysis to determine whether Plaintiff has sufficiently pled a claim for relief.

### B. Rule 12(b)(6) Motion to Dismiss

Defendant contends that because Plaintiff's minimal allegations are wholly conclusory and lack detail, they do not allow the Court to draw a plausible inference that Defendant is liable for the alleged conduct, so the Court should dismiss the Complaint for failure to state a claim under Rule (12)(b)(6). (Mot., p. 11.) Specifically, Defendant focuses on allegations regarding use of an automatic telephone dialing system ("ATDS") to say that the claims are insufficient.

"The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 946, 954 (9th Cir. 2009). An automatic telephone dialing system "means equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Plaintiff alleges that "Defendant called [her] on her cellular telephone using an autodialer and/or artificial or prerecorded voice in order to sell her medical equipment." [2] (Compl., ¶ 1.) The only facts Plaintiff alleges to support this conclusory allegation are that she received one phone call, the call was to sell medical equipment, and when Plaintiff answered the phone, she heard a pause before anyone began to speak. (*Id.* at ¶¶ 1, 13-14.) Plaintiff argues that these allegations give rise to a plausible inference that an ATDS was used. Plaintiff relies solely on the fact that upon answering the one phone call, she heard a "pause or dead air," and asserts that case law supports that this is sufficient to infer an ATDS was used. (Compl., Opp'n., ¶ 14., p. 7.) While the cases Plaintiff cites do rely on allegations that the plaintiff heard "dead air" or a "pause" upon answering the call to infer the use of an ATDS, those cases are distinguishable from this case.

---

[2] Plaintiff's original complaint included language about Defendant "using an autodialer **and/or** an artificial or prerecorded voice." (emphasis added) (Dkt. No. 1, Compl., ¶ 1.) This language is ambiguous as to what Plaintiff is claiming, and furthermore, she alleged no facts about the use of an artificial or prerecorded voice. At oral argument, Plaintiff conceded that she is not alleging the use of an artificial or prerecorded voice, only that Defendant used an ATDS. .

In *Loveless*, "dead air" was heard after answering the phone on several occasions and the court found "the allegations regarding the 'dead air' plaintiff experience[d] with respect to several calls sufficient to survive a motion to dismiss." *Loveless v. A1 Solar Power, Inc.*, 2015 WL 4498787 *3 (C.D. Cal. July 23, 2015). Experiencing dead air on several calls raised a reasonable inference that the caller used an ATDS. Plaintiff also cites the *Evans* case to support her claim that hearing a pause is sufficient to infer use of an ATDS. But there, the plaintiff alleged that defendant used an ATDS because he alleged multiple phone calls, that the calls continued after he specifically asked the defendant to stop calling, he heard a brief silence after answering many of the calls, and the calls were frequent and persistent. *Evans v. National Auto Division, L.L.C.*, 2016 WL 885050 *1-2 (D.N.J. Mar. 8, 2016).

Another case Plaintiff relies on involved two plaintiffs: Oliver, who received four calls, and Tippetts, who received 25 calls. *Oliver v. DirecTV, LLC*, 2015 WL 1727251 *1 (N.D. Ill. Apr; 13, 2015). Oliver was not able to answer any of the calls, but he alleged that when he called the number back, he got a prerecorded voice identifying the caller as the defendant. *Id.* at *2. He alleged that that was enough to infer that an ATDS was used. *Id.* The court there stated that while it is possible that an ATDS was used, the facts Oliver do not take the claim beyond a speculative level to a plausible inference. *Id.* Tippetts, by contrast, alleged that on at least three of the twenty-five calls he received, he heard a pause before a live representative began speaking, that he was always routed to a different account manager, and that he informed defendant that he did not want to receive the calls, yet they continued. *Id.* at *1. For this plaintiff, the court found that his claim survived the motion to dismiss because "Tippetts' allegation regarding the 'momentary pause,' along with his other allegations regarding Defendant's phone calls, were sufficient to draw a reasonable inference that Defendant used an ATDS in making its calls to Tippetts. *Id.* at *3. In these cases and the others cited by Plaintiff in her Opposition, the plaintiffs alleged hearing dead air or a pause on several phone calls in addition to other allegations of numerous calls, no voicemails, persistency of calls, and callbacks to a prerecorded voice. Turning to the case before the Court, Plaintiff has alleged hearing only one pause on only one phone call. The pause could be an accidental hang up, a mistake from someone realizing they had the wrong number, a bad connection, or the use of an ATDS. Plaintiff alleges no facts that allow the Court to shift from speculation to a plausible inference that the pause was because Defendant used an ATDS. And because Plaintiff only received one call, an inference of use of an ATDS for the call is just as possible as the call being made by a live person. One call and one pause, standing alone, do not take the claim of the use of an ATDS beyond the speculative level.

Additionally, in regards to the consumer complaints that Plaintiff references to support her claim that an ATDS was used, Defendant argues that these complaints actually

undermine Plaintiff's allegations.  The Court agrees that these consumer complaints contradict an inference that an ATDS was used.  Plaintiff provides nine anonymous consumer complaints retrieved from a website online to support her contentions.  (Compl., ¶ 15.)   In these complaints, consumers reference a live caller, who knew the name of the person he or she was calling for.  (*Id.*)   When referring to a phone call, one consumer wrote that "[h]e knew my name and claimed to be from some medical company following up.  Asked about my claim of diabetes."  (*Id.*)   Another consumer reported that "he [the caller] called me at work and knew my name."  (*Id.*)   Other consumer complaints in connection with the phone number stated that the caller named a specific person he or she was trying to contact.  (*Id.*)   To allege the use of an autodialer, Plaintiff must allege facts that suggest the equipment used has the capacity to store or produce telephone numbers to be called at random.  47 U.S.C. § 227(a)(1).  These complaints suggest that the caller was targeting certain individuals.  The caller knew the name of the person and asked for a specific individual.  Thus, these allegations go against an inference that an ATDS was used because they suggest that the calls were directed at certain individuals and not randomly generated by an automated device.  Furthermore, Plaintiff alleges no facts regarding whether the equipment Defendant used has the capacity to store numbers to place calls at random.  Receiving only one call and hearing only one pause does not create a plausible inference regarding the capacity of equipment to store phone numbers or to make random calls.  And, because Plaintiff alleges the receipt of only one phone call, she cannot allege sufficient facts to state a claim for relief under the TCPA.  Without more, one phone call and one pause do not support a shift from speculation to plausibility, as required under the pleading standard.  For these reasons, Plaintiff has failed to meet her burden to allege facts to state a claim under the TCPA.

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion to Dismiss **WITH PREJUDICE**.

The Pretrial and Jury Trial dates are hereby vacated.

**IT IS SO ORDERED.**